**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAFTALI KUNSTLINGER as Trustee of THE PINCHAS STOLPER INS TRUST 3/06/08,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BENEFIT LIFE COMPANY,<br><br>Defendant. | Civil Action No. 22-04534 (GC) (DEA)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Naftali Kunstlinger's ("Plaintiff") Motion to Dismiss Defendant Lincoln Benefit Life Company's ("Defendant") Amended Counterclaims, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See* ECF No. 15.) Defendant opposed (*see* ECF No. 18), and Plaintiff replied (*see* ECF No. 19). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated below, and other good cause shown, Plaintiff's Motion is **DENIED**.

I.   **BACKGROUND**[1]

   **A. Procedural History**

This dispute arises from a life insurance policy issued by Defendant (the "Policy"). (ECF No. 1-2 ¶¶ 5-8.) On or about June 2, 2022, Plaintiff, a trustee of the Pinchas Stolper Insurance Trust 3/06/08 (the "Trust") and resident of New Jersey, brought suit in New Jersey Superior Court against Lincoln Benefit, a life insurance company with its principal place of business located in Nebraska. (ECF No. 1-2 ¶¶ 2, 4.) Plaintiff alleges that (1) Defendant failed to pay the death benefit due under the Policy, (2) Defendant failed to send proper grace and lapse notices in accordance with the Policy, and (3) Plaintiff acted in reliance on Defendant's representations and was damaged by its termination of the Policy. (ECF No. 1 at 2[2]; ECF No. 1-2 ¶¶ 17-40.)

Defendant filed a notice of removal on July 12, 2022, pursuant to 28 U.S.C. § 1441, based on diversity jurisdiction and an amount in controversy exceeding $75,000.00. (*See* ECF No. 1.) Defendant then answered the Complaint and asserted two counterclaims: Plaintiff procured the Policy as an illegal human life wagering contract[3] (Counterclaim One), and Plaintiff had no insurable interest in the life of the insured (Counterclaim Two). (*See* ECF No. 5 at 11-15.) On September 8, 2022, Plaintiff moved for dismissal of Defendant's counterclaims pursuant to Rule 12(b)(6). (*See* ECF No. 7-5.)

---

[1]   The Court liberally construes Plaintiffs' Complaint and accepts all well-pleaded facts as true. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[2]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]   When parties "procure a life insurance policy on a stranger's life and receive the benefits of the policy," they are "[b]etting on a human life . . . with the hope that the person will die soon." *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 238 N.J. 157, 159 (2019). In New Jersey, such policy is illegal and considered void from the outset. *Id.* at 187.

During the parties' initial conference on October 6, 2022, the Court terminated Plaintiff's motion to dismiss as moot and granted Defendant an opportunity to amend its counterclaims to make additional factual allegations that might address Plaintiff's pleading concerns and avoid additional motion practice. (ECF No. 11 ¶¶ 5, 6; ECF No. 18 at 2.) Defendant filed its Amended Counterclaims on October 20, 2022, with additional factual allegations supporting the same two counterclaims. (*See* ECF No. 12.) Plaintiff again moved to dismiss the Amended Counterclaims pursuant to Rule 12(b)(6). (*See* ECF No. 15.)

### B. Factual Background

Defendant issued a life insurance policy to Plaintiff with policy number 01N1391386 on the life of Phineas Stolper[4] ("Mr. Stolper") who was 76 years old as of July 15, 2008, the date when the Policy was issued. (ECF No. 1-2 ¶ 5; ECF No. 12 at 14.) At the time of application, the Policy had a face value of $7,000,000.00.[5] (ECF No. 12 at 15.) The Trust is both owner and beneficiary of the Policy and had been making monthly premium payments of $19,996.50 throughout 2020. (ECF No. 1-2 ¶¶ 1, 9-10; ECF No. 12 at 3.)

On or about December 15, 2020, Defendant mailed a notice of the minimum amount due to Plaintiff advising him that a payment of $116,841.94 was due on or before February 14, 2021, or the Policy would terminate. (ECF No. 1-2 ¶ 9.) This prompted Plaintiff to call Defendant on or about February 9, 2021, to inquire about the reason for the notice. (*Id.* ¶ 11.) Plaintiff alleges, and Defendant disputes, that Defendant advised that Plaintiff may continue to pay the same

---

[4]    Although the Trust is named the Pinchas Stolper Insurance Trust, Plaintiff states in the Complaint, and Defendant admits, that the insured is Phineas Stolper. (ECF No. 1 ¶ 5; ECF No. 12 at 2.)

[5]    The Policy had a face value of $7,500,000.00 at the time the Complaint was filed. (ECF No. 1-2 ¶ 6.)

$19,996.50 monthly premium payment to prevent the Policy from terminating. (*Id.*; ECF No. 12 at 3.) Plaintiff continued to make the same $19,996.50 monthly premium payments by remitting checks dated February 9, 2021, March 8, 2021, April 8, 2021, and May 10, 2021. (ECF No. 1-2 ¶ 12.) In a notice dated May 17, 2021, Defendant declared that the Policy "lapsed with no value and all benefits are forfeited and void." (*Id.* ¶ 13.) The insured passed away on May 25, 2022. (*Id.* ¶ 14.) Subsequently, Plaintiff filed a death claim with Defendant to collect the death benefit. (*Id.* ¶ 15.) Defendant denies that there is a benefit owed and therefore has not paid the death benefit. (*Id.* ¶ 16; ECF No. 12 at 6.)

In its Amended Counterclaim, Defendant alleges that the Policy is a stranger-originated life insurance ("STOLI") policy purchased by Plaintiff as a wager on Mr. Stolper's life. (ECF No. 12 at 13.) Defendant further alleges that STOLI policies are illegal wagering contracts which violate New Jersey law and are void *ab initio*. (*Id.* at 12-13.) Defendant asserts several claims in support of this conclusion. First, Defendant believes that the Trust was created shortly before applying for the Policy. (*Id.* at 14.) They further claim that the premiums for the Policy were paid by stranger investors and not the insured. (*Id.*) Additionally, Defendant asserts that the insurance application misrepresented that Mr. Stolper had a net worth of $14,000,000.00 and an annual income of over $900,000.00 to procure $7,000,000.00 in coverage. (*Id.* at 14-15.) Finally, Defendant alleges that David Kohn, the insurance producer who facilitated the application for the Policy in 2008, is a known producer of STOLI policies. (*Id.* at 15.)

## II. LEGAL STANDARD

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, Civ. No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012). When deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker*, 292 F.3d at 374 n.7). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, on a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

Defendant asserts two bases for its position that the Policy is a STOLI and is therefore void *ab initio*: first, the Policy was an illegal wagering contract, and second, Plaintiff lacked an insurable interest at the outset of the Policy. (ECF No. 12 at 15-17.) This relates to the broader law on STOLI, which the New Jersey Supreme Court recently addressed in *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 238 N.J. 157 (2019). Although STOLI transactions can differ in structure, they "commonly involve life insurance policies procured and financed by investors – strangers – who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy." *Id.* at 175. These stranger investors "fund[] a

STOLI policy from the outset, which makes it possible to obtain a policy with a high face value." *Id.* at 171-72 (citing Susan Lorde Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization*, 13 U. Pa. J. Bus. L. 173, 188 (2010)). In other words, STOLI policies are an illegal wager on human life under which "the sooner the insured dies, the greater the company's profit." *Sun Life Assurance*, 238 N.J. at 172 (citing Martin, *Betting on the Lives of Strangers*, 13 U. Pa. J. Bus. L. at 188). When such third-party investors "without an insurable interest procures or causes an insurance policy to be procured in a way that feigns compliance with the insurable interest requirement, the policy is a cover for a wager on the life of another and violates New Jersey's public policy." *Sun Life Assurance*, 238 N.J. at 174. Such "policy would be void from the outset." *Id.* at 187.

Accepting all factual allegations as true, the Court concludes that Defendant has provided sufficient factual matter to state its claim that the Policy is void *ab initio*. Defendant alleges that investors created the Trust shortly before applying for the Policy and utilized it to conceal the STOLI nature of the policy. (ECF No. 12 at 14.) Defendant further alleges that the Policy's applicants misrepresented Mr. Stolper's net worth and annual income to conceal the source of premium payments, which were paid by stranger investors. (*Id.* at 15.) Finally, Defendant contends that David Kohn, who facilitated the application for the Policy, is known to produce STOLI policies. (*Id.*) At this stage, Defendant has adequately pled that the Policy could be an illegal wagering contract that lacked a person with an insurable interest at its inception. The Trust may be indicative of a STOLI policy because "STOLI investors attempt to conceal their actions by setting up trust or shell entities as the owners and beneficiaries of the policies." *Ohio Nat. Life Assur. Corp. v. Davis*, 2010 WL 4916643, at *1 (C.D. Cal. Dec. 1, 2010). Furthermore, stranger investors funding a policy with a high face value is also suggestive of a STOLI policy. *See, e.g.*,

*Sun Life Assurance*, 238 N.J. at 177 (noting that strangers funding the policy at the outset may raise concern). Allegations of the surrounding circumstances, such as the individuals who facilitated the application for the Policy, also support the inference that the Policy could be a STOLI. Plaintiff argues that "courts consider several factors, such as: 'the nature and timing of any discussions between the purchaser and the strangers; the reasons for the transfer; and the amount of time the policy was held'" in determining whether a STOLI policy was procured. (ECF No. 15-1 at 8 (quoting *Sun Life Assurance*, 238 N.J. at 177).) However, at the pleading stage, it would be "premature to dismiss a claim that a life insurance policy was void *ab initio* because discovery [is] essential to determining if" the policy was sold "to an individual or individuals with no insurable interest in the [decedent]'s life at the time the policy application was submitted." *Lincoln Nat. Life Ins. Co. v. Schwarz*, Civ. No. 09-03361, 2010 WL 3283550, at *8 (D.N.J. Aug. 18, 2010). Here, Defendant is entitled to proceed on its counterclaims and attempt to prove that stranger investors without an insurable interest purchased the Policy as an illegal wager on Mr. Stolper's life.

Plaintiff further argues that Defendant chose to issue the policy despite its awareness of Mr. Stolper's elderly age and the existence of the Trust as the named beneficiary. (ECF No. 15-1 at 9; ECF No. 19 at 6.) Plaintiff, however, did not confront any of Defendant's other factual allegations discussed above. Furthermore, Defendant correctly states that New Jersey has rejected the argument that an insurer may waive, or be estopped to raise, the fraud. *Sun Life Assurance*, 238 N.J. at 186-87. "When an insurance policy violates public policy, it is as though the policy never came into existence." *Id.* (citing *D'Agostino v. Maldonado*, 216 N.J. 168, 194 n.4 (2013)). Whether Defendant was aware of the above-noted facts, and if so, the impact of such awareness is a matter to be explored through discovery.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Court **DENIES** Plaintiff's Motion to Dismiss Defendant's Amended Counterclaims (ECF No. 15-1). An appropriate Order follows.

Dated July 20, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE